CHARLES A. NEWHALL *vs.* THE SECOND CHURCH AND SOCIETY OF BOSTON & others.

Suffolk.   April 7, 1965. — July 2, 1965.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Religious Organization. Trust,* What constitutes, Religious silver, Charitable trust, Transfer of trust property. *Charity. Sale,* Transfer of title. *Notice. Equity Jurisdiction,* Religious silver.

Whoever held legal title to a silver basin given to a Congregational religious organization in 1706 and a silver dish bequeathed to it in 1711, an inscription on the basin that it was "dedicated . . . for the purpose of most holy baptism" and a provision in the will bequeathing the dish that it was "for the use of the Communion table" showed commitments of the basin and the dish for use for such sacraments and constituted restrictions precluding the holder of the legal title from disposing of them [499–500]; but no such restriction appeared with respect to two other silver dishes given to the organization in 1711 and each inscribed "The gift of" a named donor, or a silver flagon given to the organization in 1711 and inscribed ". . . [name of donor] to" the organization, even though the two dishes and the flagon were in their nature suitable for use for the sacraments [500].

Where a contract was made by telephone for sale of pieces of silver by a religious organization to a buyer in another State and payment was made, but the terms of the contract as to delivery did not appear and the silver had not been physically delivered, it was held that under § 2–401 (2) of the Uniform Commercial Code, G. L. c. 106, title to the silver had not passed to the buyer. [500, 501]

A prospective buyer of a silver basin from a religious organization, by inspection of the basin, had express notice of an inscription thereon showing its commitment to use in the sacraments and precluding its disposition, even though the inscription was in Latin. [500–501]

In the circumstances, a prospective buyer of a group of pieces of silver from a religious organization was charged with notice of the terms, and the legal effect of the terms, of a trust precluding conveyance of a

good legal title to some of the pieces, and his rights under the contract of sale were subject thereto.   [501]

Upon appeal in a suit in equity in the Superior Court seeking injunctive relief against sale of pieces of silver by a religious organization, this court in the circumstances, particularly the absence of certain interested persons as parties, upon adjudging that the pieces were subject to a commitment for use for the sacraments precluding disposition of them, declined to exercise any power to order their disposition, and ordered entry of a decree in the Superior Court enjoining delivery of the pieces until further order of court and deferment of entry of a final decree for a reasonable time to afford opportunity for another proceeding seeking authority to sell the pieces.   [502]

BILL IN EQUITY filed in the Superior Court on April 8, 1963.

The suit was heard by *Ponte, J.*

*Philip R. White* (*Louis F. Eaton, Jr.,* with him) for the plaintiff.

*A. Leavitt Taylor* (*Faye Gloria Yoffa* with him) for The Second Church and Society of Boston & others.

*James J. Kelleher,* Assistant Attorney General, for the Attorney General.

WHITTEMORE, J.   We are to decide in this case whether, for purposes of injunctive relief at the instance of a proprietor, The Second Church and Society of Boston, a corporation by special act (St. 1823, c. 66) (hereinafter, the Second Church), has effectively sold to Henry F. duPont, for the Henry Francis duPont Winterthur Museum of Winterthur, Delaware, five silver vessels alleged to have been given to a predecessor unincorporated religious body, one piece in 1706 and four pieces in 1711.   Apart from the Attorney General and the Museum of Fine Arts[1] the only defendants are the corporation and the members of its standing committee.   DuPont is not a party, nor are the deacons of the Second Church or any one to represent the body of worshippers.

The judge who heard the case ruled that the Second Church had the right to sell the silver, the sale was legally voted, the sale had been ratified, but title had not passed

---

[1] The Museum is not concerned with the appeal.

because delivery had not been made. He dissolved a restraining order and ordered the delivery of the property, but stayed all proceedings and reported the case for our determination of the correctness of his orders.

The amended bill sets out that "the defendant Second Church and Society of Boston, hereinafter sometimes called 'the Church', was originally organized as a religious society in 1649 . . . and has continued since that date as an active existing religious organization"; that in 1824 the proprietors of the pews in the meetinghouse "of the Second Church and Society in Boston" were incorporated under the name, "The Second Church and Society of Boston";[2] that the "Church is the owner either legally or equitably" of the five described (and other) pieces of silver "given to the Church and held by the Deacons thereof and accepted by the Church for use in religious services of the Church, particularly for services of Communion and Baptism . . . . The gift of said . . . silver by the donors thereof and the acceptance thereof by the Church for the purposes for which it was given constitute a gift . . . impressed with a trust for the religious purposes of the Church."

The answer of the defendants the Second Church and the members of its standing committee admits these averments except that, as to the gifts, they admit only the legal ownership of the silver, and that the gifts were made to and accepted by the Second Church but deny that they were accepted exclusively for use in religious services or in serv-

[2] Statute 1823, c. 66, § 1, provides, in part: "Be it enacted . . . That . . . [five named persons], with all others, proprietors of Pews in the Meeting House of the Second Church and Society in Boston, who may become their associates in this behalf, and their successors, proprietors as aforesaid, be, and they are hereby made and constituted a body politic and corporate, by the name of the Second Church and Society of Boston; . . . and the said corporation shall have power . . . to hold and acquire real estate . . . and personal estate . . . and shall be, and they hereby are deemed in law to be seized and possessed of the said meeting house . . . and all other real and personal estate which the said . . . [named persons], and their associates as aforesaid, have in their capacity, as said proprietors, heretofore holden in common and undivided, as fully as the same meeting-house and other real and personal estate have, by them, heretofore been holden and possessed, reserving, however, to the several proprietors of pews in the said meeting-house, their right and interest in said pews respectively."

ices of communion and baptism and that the gifts were impressed with a trust for the religious purposes of the defendant the Second Church.

The silver vessels, as described in the findings, are these. (1) A baptismal basin with a diameter of thirteen and five-eighths inches, marked with the initials E.W., indicating that it was made by Edward Winslow, a renowned silversmith of Boston, and bearing this inscription "Hoc Lavacrum Septentrionati in Bostonio Ecclesiae adusum S S Baptismi dedicatum est per Adamum Winthrop adortum primi sui Filii qui baptiratus est 18 Aug: 1706." On the testimony of the head of the classics department at Milton Academy, an accurate translation is: "This basin was dedicated to the North Church in Boston for the purpose of most holy baptism by Adam Winthrop for the celebration of the birth of his first son who was baptized on 18 August 1706." (2) A dish fifteen inches in diameter marked with the initials E.W. and bearing on its rim the Foster arms, which was "left to Second Church, formerly North Church, by the will of Abigail Foster, which provided as follows: 'I give and bequeath unto the North Church in Boston the sum of 20 pounds in plate for the use of the Communion table to be delivered to the deacons of the said Church.' " The will was allowed on September 1, 1711. (3 and 4) Two dishes, each fifteen inches in diameter, marked with the initials E.W., and inscribed respectively: "The gift of Thomas Hutchinson to the Second Church in Boston, May 1711"; "The gift of Edward Hutchinson to The Second Church in Boston May 1711." (5) A flagon about twelve inches in height with a base six and three-eighths inches in diameter bearing in three places the initials "P. O.," indicating that it was made by another renowned silversmith, Peter Oliver, and inscribed "Mrs. Elizabeth Wensley to The Second Church of Christ in Boston 1711."

1. Our view of the case is such that we deem it unnecessary to determine whether there was error in the ruling that legal title to the five silver vessels is in the Second Church. The absence of parties greatly limits the effect of the ruling.

The plaintiff's contention that the Second Church does not have title is based on the Province Laws of 1754, c. 12, and succeeding statutes[3] and the view that under the statute of 1754, title to vessels of sacramental use vested in the deacons of the Second Church in 1754 and their successors.

The evidence shows that in the Second Church there was that "concurrence of a religious society . . . and a church for the observance of sacraments" that is "familiar in the history of this Commonwealth where the congregational form of church government was chiefly prevalent in the earlier days." *McNeilly* v. *First Presbyterian Church in Brookline,* 243 Mass. 331, 337. "The corporation was the legal entity which held the title to the real and personal estate used for worship and other religious purposes in the absence of express provision to the contrary. The church was the body of communicants gathered in the church membership for the celebration of the Lord's Supper and for mutual support and edification in piety, morality and religious observances. The corporation and the church, although indissolubly associated, were nevertheless separated by this distinct line of demarcation." *Ibid.*

Our cases tend to show that, unless controlled by the particular circumstances, legal title to gifts to a church for sacramental purposes, express or implied, is in the deacons. *Stebbins* v. *Jennings,* 10 Pick. 172, 185–186 ("In the case

---

3 "Whereas many grants and donations have heretofore been made by sundry well-disposed persons, in and by such expressions and terms as plainly show it was the intent and expectation of such grantors and donors that their several grants and donations should take effect so as that the estates granted should go in succession; but doubts have arisen in what cases such donations and grants may operate, so as to go in succession; for ascertaining whereof — Be it enacted by the Governour, Council and House of Representatives, [Sect. 1] That the deacons of all the several Protestant churches, not being Episcopal churches, and the church-wardens of the several Episcopal churches, are and shall be deemed so far bodies corporate, as to take in succession all grants and donations, whether real or personal, made either to their several churches, the poor of their churches, or to them and their successors, and to sue and defend in all actions touching the same; and wherever the ministers, elders or vestry shall, in such original grants or donations, have been joined with such deacons or church-wardens as donees or grantees in succession, in such cases such officers and their successors, together with the deacons or church-wardens, shall be deemed the corporation for such purposes as aforesaid." The substantive provisions of the statute were carried forward in St. 1785, c. 51. See now G. L. c. 68, §§ 1, 2.

supposed, the service of plate, whether given to the church or parish, or by whatever designation, as it could only have been designed to be used in the celebration of the christian ordinances, would by law vest in the deacons, the law implying from the nature of the property, that such was the trust intended by the donor"). *Baker* v. *Fales,* 16 Mass. 488, 496 ("There may undoubtedly be donations to a church without any express designation of trust, which, from the nature of the property given, ought to be considered to be in trust for church uses; such as furniture for a communion table, a baptismal font, etc. The particular use, implied from the nature of the property given, would, in such case, exclude any claim of the parish or society, as such, to such property"). *Page* v. *Crosby,* 24 Pick. 211, 214 ("The plaintiff has a right to hold these goods [communion plate] in trust and for the use of the church of which he is deacon"). *Sawyer* v. *Baldwin,* 11 Pick. 492, 495 ("[B]y force of the statute . . . the legal property [church record book] was in those persons who were rightfully and legally the deacons"). *Parker* v. *May,* 5 Cush. 336, 347 ("These funds [for expenses of the communion and other church expenses] are exclusively church funds . . . distinct from those of the parish or religious society, and subject to the full disposing power of the church"). Accord, *Weld* v. *May,* 9 Cush. 181, 186.

Aspects of the record, however, tend to support the ruling of the judge that title is in the incorporated defendant. The corporation, the Second Church, by its incorporated name is expressly both the church and the society. It has asserted ownership of this and like property for a long time and has sold similar pieces. The by-laws provide for a board of deacons and state their duties in a way to affirm title in the corporation and limit the deacons' power to custody and maintenance. The board of deacons is "responsible for the maintenance of the Communion Silver belonging to The Second Church and the placement of said silver on the altar . . . and . . . for the placing of said silver in the vault of The Second Church at the conclusion of each service." The plaintiff's brief appears to recognize

strength in the position that legal title is in the corpora-
tion, subject to a trust for the church.[4]   However, no one
with authority to speak for the deacons or for the church
is before us and the appeal, as we view it, can be disposed
of by decision of the issue of a trust or restriction in re-
spect of two of the silver pieces.

2.  We hold that the baptismal basin and the Abigail
Foster dish were given and received subject to a commit-
ment to their use, respectively, for the sacrament of bap-
tism and the sacrament of communion, effectively limiting
the power of the holder of the legal title to dispose of them.
See point 5, *post*.

The effect of the gift is to be determined as of the time
when made.  *Trustees of Andover Seminary* v. *Visitors*,
253 Mass. 256, 285–286.  It is undisputed that in 1706 and
1711 the Second Church was a Trinitarian Congregational
Church in which the sacraments of baptism and holy com-
munion were of high religious significance.

The inscription on the baptismal basin, ''dedicated to the
. . . Church . . . for the purpose of most holy baptism,''
and the provision in the Abigail Foster will giving ''plate
for the use of the Communion table'' were express commit-
ments of the respective vessels to the purposes set out.

The commitment is not less binding because an express
trust was not created.  *Animal Rescue League of Boston* v.
*Assessors of Bourne*, 310 Mass. 330, 333–334.  *Wellesley
College* v. *Attorney Gen.* 313 Mass. 722, 723–724.  *Anna
Jaques Hosp.* v. *Attorney Gen.* 341 Mass. 179, 180.  *St.
Joseph's Hosp.* v. *Bennett*, 281 N. Y. 115, cited in *Massa-
chusetts Charitable Mechanic Assn.* v. *Beede*, 320 Mass.
601, 611.  Restatement 2d: Trusts, § 348, comment f.  See
*McNeilly* v. *First Presbyterian Church in Brookline*, 243
Mass. 331, 339; *American Inst. of Architects* v. *Attorney
Gen.* 332 Mass. 619, 622.  Compare *Greek Orthodox Com-
munity* v. *Malicourtis*, 267 Mass. 472, 480–481.

---

[4] The brief states: ''The fact, if it be a fact, that the silver was treated
by the corporation as in its custody does not mean that it was any less in
trust for the Church. . . .  Possibly the ultimate control of affairs of the
Society and the Church may be in the members of the corporation, but, if
it is, it would seem that it must be exercised, not by by-passing or disre-
garding the Church for whose benefit the property is held.''

The Second Church adopted Unitarianism early in the nineteenth century. In recent years, beginning about 1961, it has not observed the sacrament of holy communion. There has been no sacramental use of the silver pieces for some time.[5] These developments do not destroy the restrictions on the title thereto and on the disposition thereof.

3. The plaintiff, relying particularly on *Stebbins* v. *Jennings,* 10 Pick. 172, 185, and *Baker* v. *Fales,* 16 Mass. 488 (see quotations, *supra*), contends that, in respect of the two other dishes and the flagon, a like restriction should also be implicit from the nature of the property given.

The two dishes, of course, are similar to the Abigail Foster dish that was given for the use of the communion table. They are suitable for use in the communion service. The flagon is suitable for holding the sacramental wine. There is, however, no express commitment to such use. The issue before us is not between the covenanted church and the proprietors, and we do not decide whether the nature of the property determines the title to be in the deacons for the benefit of the church. See point 1. We confine our decision to the question whether there is such a restriction as to limit the disposition of the property by the legal title holder. We do not discern such restriction. That these three vessels were appropriate for covenanted church use distinguished from general parish use should guide the disposition of the proceeds should they be sold. It does not limit the right of the title holder to sell them.

4. Although the purchaser, not being a party, will not be bound by our rulings, we must, nevertheless, decide whether on this record, for purposes of injunctive relief, the property in the silver has passed to him. We rule that it has not, even if the legal title was in the Second Church. He was, of course, aware that the subject of the contract of sale was church property, some if not all of it, of sacra-

---

[5] There was testimony tending to show that up to April, 1961, communion silver has been in occasional use because of its symbolic significance and there was some testimony that whether observance of communion is periodically included in the service of a Unitarian Church (now Unitarian-Universalist), at least for its symbolic significance, depends in some degree upon the guidance and views of the incumbent minister.

mental character.   The inspection made on his behalf gave
express notice of the inscription that limits the use and
disposition of the baptismal basin.   We are not impressed
with the contention that one acquiring these outstanding
pieces of museum quality silver would not be concerned
with the meaning of an inscription because in Latin.   The
subject of the contract of sale was the group of five silver
pieces.   We rule that the buyer's rights under the contract
are subject to the inability of the legal title holder to con-
vey good title to the property described.   Scott, Trusts (2d
ed.) § 310.   Restatement 2d: Trusts, §§ 288, 296, 297.   See
*Jones* v. *Swift,* 300 Mass. 177, 185.   A transferee charged
with notice of the terms of a trust is also charged with no-
tice of the legal effect of those terms.   *Jones* v. *Jones,* 297
Mass. 198, 211.   Restatement 2d: Trusts, § 297, comment j.

The contract was completed by telephone.   Payment had
been made by check.   Terms as to delivery then negotiated
do not appear.   A letter from the curator of the Winter-
thur Museum tends to show that the contract included the
obligation to deliver the silver pieces to the buyer's repre-
sentative in Boston.[6]

On this record we think that the Uniform Commercial
Code, G. L. c. 106, § 2–401 (2), is applicable.   This pro-
vides: "(2) Unless otherwise explicitly agreed title passes
to the buyer at the time and place at which the seller com-
pletes his performance with reference to the physical de-
livery of the goods, despite any reservation of a security
interest and even though a document of title is to be deliv-
ered at a different time or place; and in particular despite
any reservation of a security interest by the bill of lading
. . . ."   It follows that § 2–401 (3) is inapplicable: "Un-
less otherwise explicitly agreed where delivery is to be
made without moving the goods . . . (b) if the goods are
at the time of contracting already identified and no docu-

---

[6] "Confirming our telephone conversation of this afternoon, I have made
arrangements for Charles F. Hummel, associate curator of the Museum, to
act on Mr. du Pont's behalf in receiving from you the five pieces of silver.
Mr. Hummel is of medium build and dark haired.   He will meet you at the
Shawmut Branch Bank, Beacon Street and Park Drive.   I have asked him
to bring a carbon copy of this letter with him and to have you sign a receipt
form upon picking up the silver."

ments are to be delivered, title passes at the time and place of contracting."

5. It would be inappropriate in these proceedings, particularly in the absence of parties, to exercise the court's power to order disposition of the two pieces held subject to restriction, and we take no action in respect of that part of the defendants' answer that seeks that relief. An independent application to the county court would be the appropriate means to present all the issues involved. See G. L. c. 204, § 12;[7] Scott, Trusts (2d ed.) § 381 ("where compliance is impossible . . . or . . . [new] circumstances . . . would . . . impair the accomplishment of the purposes of the trust"). We make no intimation whether on this record there is a showing justifying cy pres or like action. If statutory proceedings addressed to a sale of the restricted property are begun, there should be notice to all the proprietors, to the deacons and also to all the members of the church, the record tending to show that there are some such from time to time who have not become proprietors of pews and hence members of the corporation. *Old South Soc. in Boston* v. *Crocker,* 119 Mass. 1, 26–27.

There was, we think, a general charitable intent, notwithstanding the restrictions on the two pieces, so that no notice need be given to those standing in the interest of the donors. *Anna Jaques Hosp.* v. *Attorney Gen.* 341 Mass. 179.

6. The order for delivery of the five pieces of silver is reversed. A decree is to issue in the Superior Court enjoining the delivery of the baptismal basin and the Abigail Foster dish until further order of the court. A final decree is not to be entered for a reasonable time pending opportunity for a proceeding seeking authority to sell, and, if such is begun, shall reflect the result of such proceeding.

*So ordered.*

---

[7] "The supreme judicial court, upon petition of a party interested and after notice, may order the sale or transfer of any real or personal property held for churches, cemeteries or other like trusts and the investment or disposition of the proceeds, and may make orders and decrees necessary to secure the rights of owners of, or of other persons claiming an interest in, pews or in tombs or lots in cemeteries."