## CROWN IRON WORKS COMPANY v. COMMISSIONER OF TAXATION.

214 N. W. 2d 462.

January 25, 1974—No. 44209.

*Warren Spannaus,* Attorney General, and *Dann L. Parsons,* Special Assistant Attorney General, for appellant.

*O. A. Brecke* and *J. Robert Nygren,* for respondent.

Heard before Knutson, C. J., and Peterson, Kelly, Todd, and Scott, JJ., and considered en banc.

SCOTT, JUSTICE.

Appeal from a judgment for plaintiff, Crown Iron Works Company (Crown), entitling it to recover $5,565.40 in sales tax paid to the State of Minnesota. We reverse.

Crown manufactures and sells machinery. On April 8, 1967, Crown entered into a contract with Sun Plant Products, Inc., (Sun Plant). Crown agreed to supply Sun Plant with 21 pieces of machinery, to be used for the extraction of oil from sunflower

seeds, for the contract price of $189,700. The agreement provided that Crown would supply the plans and drawings for the proper installation of the machinery, the services of an engineer to aid in the erection of the plant, and the services of an operating supervisor to train Sun Plant's operators. The agreement further included the following provision:

"The price herein quoted does not include any applicable city, county or state sales tax. Any taxes levied on this sale are to be borne by the purchaser."

At the time the contract was entered into, Sun Plant paid Crown the sum of $47,425 on account, and Crown began manufacture and the procuring of parts not made by Crown from other firms. All such parts were to be used in this particular undertaking.

In September 1967, Crown made the first shipment of this machinery to Sun Plant and the final shipment was completed in December 1967. On January 25, 1968, Crown filed with the commissioner of taxation an application for a general contractor's exemption from the sales tax. The exemption was denied pursuant to a determination by the commissioner that Crown was not a general contractor but had only contracted to sell tangible personal property. Crown paid $5,691 as the sales tax due on the gross receipts from the sale of the machinery. Crown sought reimbursement from Sun Plant, pursuant to the contract provision, and was informed that, although Sun Plant was liable for that amount, payment was refused because Crown had not completed its performance under the contract.

On October 10, 1969, Crown sought a refund from the commissioner on the basis that it could not collect the tax from the purchaser. This request was also denied, on April 15, 1970, and on May 15, 1970, the commissioner issued a final order denying any refund.

The present action was commenced on December 23, 1970, plaintiff alleging that the contract between Crown and Sun Plant was entered into on April 8, 1967, and that by July 31, 1967, a substantial portion of the work had been performed by Crown.

Therefore, Crown sought relief on the basis that the collection of the tax was unauthorized and contrary to the laws of the state, and that Crown was entitled to a refund.

The lower court found that "although final delivery of all the material was not made until after the effective date of the sales tax, this sale was complete and enforceable on April 8, 1967, when the contract was made, and was not subject to the sales tax."

The sole issue before us is: Where a contract providing for the manufacture and delivery of goods, many of which are not yet in existence, is made before the effective date of Minn. St. c. 297A, is the sale complete, for sales tax purposes, on the contract date or when the seller has fully performed by delivering the goods to the buyer?

A reading of the relevant sections of Minn. St. c. 297A provides the basis for our conclusion that this was not a completed sale before the effective date of the imposition of the sales tax.[1] Minn. St. 297A.01, subd. 3, provides in pertinent part:

"A 'sale' and a 'purchase' includes, but is not limited to, each of the following transactions:

(a) Any transfer of title or possession, or both, of tangible personal property, whether absolutely or conditionally, and the leasing of or the granting of a license to use or consume tangible personal property, for a consideration in money or by exchange or barter."

This section provides the guidelines for our determination, but the Uniform Commercial Code as adopted in this state clarifies the pivotal term "transfer of title." Although c. 297A contains neither express nor referential provisions adopting the title-passing tests of the Uniform Commercial Code, we conclude that

---

[1] Minn. St. 1967, § 297A.02, provides in part: "There is hereby imposed an excise tax of three percent of the gross receipts of any person from sales at retail, as hereinbefore defined, made in this state after July 31, 1967."

those tests are applicable to c. 297A and provide an objective basis upon which to determine transfer of title.

Minn. St. 336.2—401[2] was designed to eliminate the "intention" tests in determining title. Realizing that this purpose would not be completely fulfilled, the authors drafted 336.2—401, with its focus upon the title concept, to determine passage of title when other sections of the code are not applicable.

Identification to the contract is a necessary prerequisite to the passing of title. Where future goods are involved, as here, appropriation of the goods to the contract must be more than a selection by a seller who retains the right to choose the specific article to be supplied to the purchaser.[3] It has further been held that where, at the time the contract to sell was entered, the seller was subsequently to acquire the goods sold, as in the present case with respect to a portion of the goods, title passed to the purchaser when the goods were appropriated to the contract.[4]

---

[2] Minn. St. 336.2—401 provides in part: "Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 336.2—501), * * *.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

(a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) if the contract requires delivery at destination, title passes on tender there."

[3] Wills v. Investors' Bankstocks Corp. 257 N. Y. 451, 178 N. E. 755, 78 A. L. R. 1013 (1931).

[4] Lamborn v. Seggerman Bros., Inc. 240 N. Y. 118, 147 N. E. 607, 38 A. L. R. 1540 (1925). See, also, Del Duca, *Title Provisions of the Uniform*

Minn. St. 336.2—501[5] designates the manner in which identification is accomplished. Nothing in the record indicates that Crown took positive action prior to the September 1967 shipping date to set the goods aside or otherwise specify that they were identified to the contract with Sun Plant.

This state has further adopted the theory, by the enactment of Minn. St. 336.2—401(2), that unless otherwise explicitly agreed upon, title passes at the time and place at which the seller completes his performance with respect to the physical delivery of the goods.[6] In the facts before us the time of delivery is controlling, for there were no express provisions to the contrary. As delivery was accomplished after the effective date of the imposition of the sales tax, taxable sale occurred.

When goods are in the process of manufacture, the contract has been held to be executory, and title did not vest in the buyer before the completion or production of the property. When faced

---

*Commercial Code and Pre-Act Contracts Under Pennsylvania's Sales and Use Tax,* 63 Dickinson L. Rev. 253.

[5] Minn. St. 336.2—501 provides in part: "(1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(a)   when the contract is made if it is for the sale of goods already existing and identified;

(b)   if the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers."

See, also, First Nat. Bank & Trust Co. v. McElmurray, 120 Ga. App. 134, 169 S. E. 2d 720 (1969); Draper v. Minneapolis-Moline, Inc. 100 Ill. App. 2d 324, 241 N. E. 2d 342 (1968). See, also, 67 Am. Jur. 2d, Sales, § 237 et seq.

[6] See, Motors Ins. Corp. v. Safeco Ins. Co. 412 S. W. 2d 584 (Ky. 1967); Newhall v. Second Church and Society, 349 Mass. 493, 209 N. E. 2d 296 (1965).

with a similar situation, the Alabama Supreme Court held that where an order is given to a manufacturer prior to the effective date of the sales tax, but delivery and payment occur after the effective date, the sale is taxable.[7]

The trial court relied upon Hansord Agency, Inc. v. Commr. of Taxation, 294 Minn. 198, 199 N. W. 2d 823 (1972), in deciding that the rights of Crown and Sun Plant were "irrevocably fixed" at the time the contract was entered into on April 8, 1967. We cannot agree, for the transaction in that case involved the rental paid, after the effective date of the sales tax, on automobile leases entered into prior to the effective date. This court held that, since the rights of the lessor and lessee were irrevocably fixed at the time the lease was entered into, the lessee had an unconditional obligation to pay the entire amount and the time at which the payment was due was irrelevant.

In the case before us, there can be no question that the goods were either not in existence or not identified to the contract before the effective date of the sales tax. Therefore, we cannot extend the Hansord principle to this decision. Since the automobiles leased by Hansord were existing at the time the agreement was entered into, the conclusion that the rights of the parties were irrevocably fixed was proper. Here, we find no similar existing goods. The contract between Crown and Sun Plant for future goods is not aleatory, but it did not immediately transfer the ownership of property. Title to future goods cannot yet pass, for the goods are not yet in existence, and title to component parts does not vest in the purchaser for they are not the subject matter of the contract.

Therefore, the conclusion that the rights of the parties were irrevocably fixed and that title passed at the contract date, taking the transaction outside the purview of the sales tax, cannot be upheld. Title passed when the completed goods were

---

[7] McPhillips Mfg. Co. v. Curry, 241 Ala. 366, 2 So. 2d 600 (1941).

delivered to the purchaser, and the sales tax was properly imposed.

Reversed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.