UNITED TECHNICAL CORPORATION, Plaintiff-Appellee, *v.* THE
DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (2nd Division)     No. 81-739

Opinion filed June 29, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellant.

McDermott, Will & Emery (Hamilton Smith and Stewart W. Karge, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The Illinois Department of Revenue (Department) appeals from an adverse decision on administrative review in an action by which it sought to collect the Retailers' Occupation Tax (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) (ROT) and Municipal Retailers' Occupation Tax (Ill. Rev.

Stat. 1977, ch. 24, par. 8—11—1) (MROT)[1] allegedly due from United Technical Corporation (United). The sole issue raised on appeal is whether partial prepayment of the purchase price of tangible personal property is taxable at the time of receipt thereof by the seller.

United is a holding company whose subsidiary Marshall & Huschert is a machine tool distributor of a complete line of tools used in the metal-working industry.

United issued a series of invoices seeking prepayments of part of the purchase price of various pieces of equipment for which it received said payments, but which were not included in its ROT returns. There were seven such transactions in which certain companies[2] ordered machinery to be manufactured. Prepayments were made by these companies to United from the time the orders were acknowledged until the machines were shipped. That time period spanned between eight and 14 months after the original purchase orders, except in one case in which the machine had not yet been shipped at the time of hearing.

On June 14, 1979, the Department issued and sent to United a notice of tax liability for the period July 1, 1976, through September 30, 1978. United filed a notice of protest of the tax assessment and requested a hearing, which was granted. During the hearing, evidence was adduced by the Department predicating the alleged deficiency upon the prepayment receipts not included in United's ROT returns. Witnesses for United testified that in accordance with industry practice, equipment was shipped free on board, with title passing when the machines were placed on trucks to be delivered to the customers, except for imports, wherein title would pass at the port of entry. Further, the purpose of requiring customers to make prepayments against the purchase price was to finance the manufacturer's engineering, labor and material costs incurred in connection with the manufacturing process. When purchase orders were received by United, such orders would be subject to cancellation; equipment could be retained or shipped over a period of time; and a machine might never be shipped if it could not perform to the satisfaction of the customer, in which case the purchase price would be cancelled. Finally, industry practice required payment of one-third of the purchase price after the order was acknowledged, one-third when the machinery was successfully "run off," and the balance 30 days after shipment. The hearing referee determined that the tax was payable upon receipt by the seller of prepayment and rendered a final tax assessment of $145,303.87.

The trial court reversed the assessment of the referee on the grounds

---

[1] The MROT incorporates by reference sections of the ROT relevant to this appeal; therefore, reference to both will be made collectively as "ROT" or as "the Act" hereinafter in this opinion.

[2] Caterpillar Tractor Co., Ideal Tool Co., Danly Machine Corp. and Gardner-Denver Corp.

that: section 2 of the ROT imposes a tax on gross receipts from sales at retail (Ill. Rev. Stat. 1977, ch. 120, par. 441); a sale at retail is defined as any transfer of ownership of or title to tangible personal property to a purchaser for use and consumption (Ill. Rev. Stat. 1977, ch. 120, par. 440); and, because United's customers did not acquire ownership of the machine tools when prepayment was made, such payments did not constitute gross receipts from a sale at retail and, therefore, were not taxable. From this order, the Department appeals.

The ROT is not a privilege tax on the consumer, nor a property tax on the goods, nor a sales tax on the transaction; rather, it is an occupation tax on entities engaged in the business of making "sales at retail," *i.e.*, selling tangible personal property at retail. (*Central Television Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, 426-27, 189 N.E.2d 333; *H. Kohnstamm & Co. v. Department of Revenue* (1956), 9 Ill. 2d 182, 183-84, 137 N.E.2d 354; *Ahern v. Nudelman* (1940), 374 Ill. 237, 239, 29 N.E.2d 268.) The initial consideration must be whether, under the facts of each case, the putative taxpayer is engaged in a taxable occupation; if so, all of that entity's gross receipts from sales, whenever received, are taxable. (*Automatic Voting Machine Corp. v. Daley* (1951), 409 Ill. 438, 100 N.E.2d 591.) United does not challenge the propriety of its amenability to the tax, a point which it concedes. The issue which it postulates, and in which the Department in essence concurs, is "[t]he question [of] * * * *when* [prepayments] are subject to tax." (Emphasis added.)

United argues that gross receipts referred to in the ROT cannot be taxed until there has been a transfer of ownership of or title to tangible personal property from the seller to the buyer. Conceding that prepayments by purchasers to United are indeed gross receipts, it insists nevertheless that because no transfer of ownership or title to the machinery has as yet taken place no tax may yet be imposed. A litany of factors are set forth by United in support of this theory, which include:

(a) the subject goods were not plainly identified to the contract at the time prepayments were received;

(b) the subject goods were not even in existence at the time prepayments were received;

(c) no delivery of the goods had been made at the time prepayments were received;

(d) title to the goods had not passed at the time prepayments had been received.

From the foregoing, United concludes that the statutory definition of "sale at retail" limits the inclusion of "gross receipts" which are subject to the tax.

The Department counterposes that the statutory definition of a "sale at retail" is not meant to apply as a limitation on the Department's ability

to tax particular receipts; rather, the definition applies to determine whether the taxpayer is engaged in an occupation which is subject to taxation under the ROT, *i.e.*, "the business of selling tangible personal property at retail."

Neither party has cited, nor have we found, a case directly in point within or without the jurisdiction involving similar statutory provisions.

Notwithstanding the Department's argument, analysis of the transaction itself is proper in determining whether it qualifies as a sale under the Act. (See *Metnick v. Department of Revenue* (1963), 28 Ill. 2d 180, 190 N.E.2d 750; *Collinson Stone Co. v. Department of Revenue* (1971), 48 Ill. 2d 468, 273 N.E.2d 1; *Western Illinois Stone Co. v. Department of Revenue* (1966), 35 Ill. 2d 275, 220 N.E.2d 207; *Department of Revenue v. Jennison-Wright Corp.* (1946), 393 Ill. 401, 66 N.E.2d 395; *Standard Oil Co. v. Department of Finance* (1943), 383 Ill. 136, 48 N.E.2d 514.) In some situations, title to goods may pass upon the execution of a contract. (See *Butler Manufacturing Co. v. Department of Finance* (1943), 383 Ill. 220, 49 N.E.2d 31.) There may be circumstances under which ownership may pass to the buyer even where title remains in the seller. (See *Miller Brewing Co. v. Korshak* (1966), 35 Ill. 2d 86, 90, 219 N.E.2d 494.) Unlike the circumstances in *Miller*, however, the start up costs of manufacturing the machinery are generated by activities relating to products not yet in existence. (*Cf. Collinson Stone Co. v. Department of Revenue*; *Western Illinois Stone Co. v. Department of Revenue*.) Under the evidence, even where "run-off," the machinery may be rejected and the sale never consumated. In *Miller*, the point-of-sale advertising was already manufactured, found acceptable, and was simply awaiting drop-shipment directions. The Department has shown no reason why title or ownership must be considered to have passed to the purchasers in the case at bar.

In *Crown Iron Works Co. v. Commissioner of Taxation* (1974), 298 Minn. 213, 214 N.W.2d 462, a contract for the sale of goods to be manufactured in the future was executed before the effective date of a sales tax statute, but the goods were not delivered until after the effective date. The sales tax was held to have been properly imposed since the taxable event occurred upon delivery of goods rather than execution of the contract. The court relied upon the Uniform Commercial Code in its analysis, which provides that identification to the contract, a necessary prerequisite to the passing of title, occurs in the case of future goods when goods are shipped, marked, or otherwise set aside, and that unless otherwise explicitly agreed upon, title passes at the time and place at which the seller completes his performance with respect to delivery of the goods. (298 Minn. 213, 217, 219 N.W.2d 462, 464-65.) The taxpayer took no positive action to identify goods to the contract prior to the shipping date of the goods; therefore, title to the goods passed when shipped, which occurred

after the effective date of the statute. The Illinois Supreme Court has also applied the title-passing tests of the Uniform Commercial Code to determine whether a sale has occurred for taxation purposes. See *O'Brien v. Isaacs* (1965), 32 Ill. 2d 105, 203 N.E.2d 890.

■■ In the instant case, there is no evidence of record that goods were identified to the contracts prior to their shipping dates. The contracts do not expressly state as to when title passes to the buyer. Under section 2—401(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 2—401(1)), title to goods cannot pass under a contract for sale prior to their identification to the contract. Section 2—401(2) provides that title passes to the buyer at the time and place at which the seller completes his performance, unless otherwise explicitly agreed. (Ill. Rev. Stat. 1977, ch. 26, par. 2—401(2).) Therefore, it must be held here also that title passes at the time and place of United's completed performance.

The Department urges that *Crown Iron Works* is inapplicable at bar because the tax statute considered therein predicated a sale on the transfer of title or possession, whereas the ROT predicates a sale on the transfer of title or ownership. Therefore, the *Crown Iron Works* court did not specifically address the concept of passage of ownership as distinct from that of passage of title. While this is true, the Department has cited no cases for the principle, a necessary corollary of its argument, that ownership to goods *yet to be manufactured* should pass to a purchaser in advance of title.

■■ The Department asserts that to the extent that the statutory definition of "sale at retail" is relevant to a determination of the taxability of the prepayments made, the transactions in the case at bar constitute sales at retail under the Act and are thus taxable, citing *Butler Manufacturing Co. v. Department of Finance* for the principle that the execution of a contract of sale is sufficient to pass title to the purchaser under the ROT. In *Butler,* however, the meal grain storage bins which were the subject matter of the contract were already in existence. Further, the precise issue raised in the instant case was not considered in *Butler.* The Department also relies upon *State ex rel. Thompson-Stearns-Roger v. Schaffner* (Mo. 1973), 489 S.W.2d 207. There the contractors entered into agreements pursuant to which they were to build certain facilities for the United States government. In so doing, they purchased property the cost for which was to be passed on to the United States. The contracts between them and the United States provided that title to the property would vest in the government upon delivery of such property to the government by the vendor. The court held there that the contractors possessed an ownership interest in the goods, subjecting them to taxation, although title passed to the government upon delivery to the job site and acceptance there. As with *Butler,* no issue was either raised or decided with respect to

ownership of goods to be manufactured in the future or the taxability of prepayments received for said goods. The Department cites *Reif v. Barrett* (1933), 355 Ill. 104, 188 N.E. 899, *overruled on other grounds in Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45, in which the court acknowledged that where tangible personal property is transferred under a conditional sales contract, a tax is levied on the basis of actual receipts rather than upon the selling price. Similarly, on a credit sale the taxpayer is excused from paying tax until the account is paid. The Department argues that, just as receipts are taxed in the case of conditional or credit sales when they are received, so here, prepayments should be subject to taxation when they are received. Overlooked in this argument, however, is that in credit and conditional sales transactions, the purchaser usually is given possession and use of a finished product and lacks only legal title to the object, a situation not contemplated under the instant facts.

■■ Finally, the Department urges that taxation of the prepayments is authorized by article 3(4)(d) of the Department Rules and Regulations,' which provides, in part, that "[t]he giving of a binding purchase order by the purchaser and the making of a payment on the price are sufficient to establish that a sale is intended for the purpose of determining that the seller has received taxable 'gross receipts.' " Department Rules and Regulations may be considered as persuasive authority; however, they can neither limit nor extend the scope of the Act. (*Terrace Carpet Co. v. Department of Revenue* (1977), 46 Ill. App. 3d 84, 360 N.E.2d 153.) In light of the foregoing considerations, we are compelled to find that article 3(4)(d) extends the tax liability for payments under these circumstances beyond the parameters of the Act.

The order of the circuit court is accordingly affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.