No. 3--06--0656

Filed January 14, 2008

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| ACME MARKETS, INC., | ) | Appeal from the Circuit Court |
| | ) | for the 12th Judicial Circuit, |
| Plaintiffs-Appellants, | ) | Will County, Illinois |
| | ) | |
| v. | ) | |
| | ) | Docket No. 02-TX-205 |
| KAREN CALLANAN, County Treasurer | ) | |
| and ex-officio County Collector of Will | ) | |
| County, Illinois, | ) | |
| | ) | |
| Defendant-Appellee, | ) | Honorable |
| | ) | Herman A. Haase, |
| | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

Plaintiff taxpayer Acme Markets, Inc., filed an objection over a 2001 property tax levy imposed by defendant Karen Callanan, county treasurer and ex-officio county collector of Will County, to help pay for the operation of the Will County detention facility. At a hearing the trial court found against plaintiff, denying plaintiff relief on its tax objection. The trial court later denied plaintiff's petition for a rehearing. Plaintiff now appeals the finding of the trial court and we affirm.

FACTS

In 1997, the Will County Board voted to impose a property tax levy to help pay for

1

"Detention Home - Operations" purposes under section 5 of the County Shelter Care and Detention Home Act (55 ILCS 75/5 (West 2004)). Will County was, at the time of the levy, subject to the provisions of the Property Tax Extension Limitation Law (hereinafter PTELL). (35 ILCS 200/18-185 *et seq.* (West 2004)). Prior to the enaction of the levy in 1997, no referendum was held and the levy was never submitted for approval to the voters of Will County. The levy was imposed every year between 1997 and 2001 and was never submitted for voter approval at a referendum. Plaintiff objected to the 2001 levy under PTELL, contending that since this was a "new rate," the law required that the county submit the levy to a referendum to be approved by the voters of Will County pursuant to section 18-190 (35 ILCS 200/18-190 (West 2004)). Plaintiff contended that since the levy was imposed in 1997 only by a vote of the county board and not by referendum, the levy was void. At a hearing before the trial court in June 2006, the court rejected plaintiff's notion that the levy was a "new rate" requiring a referendum. Further, the court found that any objections plaintiff had to the imposition of the levy without referendum should have been raised at the time the levy was imposed in 1997, not four years later. The trial court later denied plaintiff's petition for rehearing on the matter, and this appeal follows.

ANALYSIS

On appeal, this court must determine whether or not the "Detention Home - Operations" levy (hereinafter the levy) was a "new rate" for the purposes of the statute, thereby requiring a referendum before imposition. Further, if this court determines that the levy was a "new rate," we must then decide whether the failure to hold a referendum on the tax's imposition acts to void the prior tax levies imposed in 1997, 1998, 1999, and 2000, not just 2001.

On appeal, both sides have stipulated as to the facts and the standard of review. There is

no factual dispute. Rather, the issues before this court rest entirely on statutory and case law interpretation. As this is purely a question of law and statutory interpretation, our standard of review is *de novo*. Central Illinois Light Co. v. Department of Revenue, 336 Ill.App.3d 908, 911, 784 N.E.2d 442, 445 (2003).

Plaintiff contends that defendant erred by not submitting the levy to a voter referendum before enacting the tax. In support of this contention, plaintiff argues that as a "new rate" under section 18-190, defendant was required to submit the levy to voter consideration and that defendant's failure to do so results in the levy being void. Defendant counters that the levy is not a "new rate" under the statute and case law, and as a result, no voter referendum was required. Rather, defendant contends that only the approval of the Will County Board, which was sought and obtained, was required.

The levy was imposed to pay for the operations of the detention home and was authorized under section 5 of the County Shelter Care and Detention Home Act (55 ILCS 75/5 (West 2004)). The Act states in part:

> "[I]n counties with over 300,000 but less than 1,000,000 inhabitants that establish a shelter care or detention home by majority vote of their county boards, taxes for construction and maintenance of the home may be extended without adoption of this Act by the legal voters of the counties and without a referendum." 55 ILCS 75/5 (West 2004).

This provision then falls under PTELL, which states in relevant part:

3

"If a new rate or a rate increase is authorized by statute to be imposed without referendum or is subject to a backdoor referendum, as defined in Section 28-2 of the Election Code [10 ILCS 5/28-2 (West 2004)], the governing body of the affected taxing district before levying the new rate or rate increase shall submit the new rate or rate increase to direct referendum under the provisions of Article 28 of the Election Code [10 ILCS 5/28-1 *et seq.* (West 2004)]." 35 ILCS 200/18-190 (West 2004).

Will County falls under the provisions of PTELL. It is also a county with between 300,000 and one million inhabitants. Further, the levy may be extended without a referendum. Therefore, if it is a "new rate," it will be subject to voter approval of a referendum under PTELL. 35 ILCS 200/18-190 (West 2004).

Whether a tax of the type imposed by defendant is considered new under PTELL was first examined in In re Application of the Du Page County Collector for the Year 1993, 288 Ill.App.3d 480, 681 N.E.2d 135 (1997) (hereinafter 1212 Associates). In 1212 Associates, property owners brought an action against a county collector where they objected to a tax levied by a public library district for building and equipment purposes. 1212 Associates, 288 Ill.App.3d at 481, 681 N.E.2d at 136. The objectors argued that the 1993 Glenside Public Library District levy violated section 18-190(a) of the Tax Cap Act (35 ILCS 200/18-190(a) (West 1994)) because it had not been approved by a direct referendum. 1212 Associates, 288 Ill.App.3d at 481, 681 N.E.2d at 136. (The statute concerned in this case was the Property Tax Extension Limitation Act, or "Tax Cap

4

Act," a prior version of PTELL that operated in the same manner.) The trial court, siding with the objectors, ruled that the tax was invalid because section 18-190(a) required a referendum be held before a "new rate" or "rate increase" was imposed. 1212 Associates, 288 Ill.App.3d at 481, 681 N.E.2d at 136. In reversing the trial court's ruling invalidating the tax , the Second District Appellate Court, Justice McLaren, wrote:

"After reviewing the terms 'new rate' and 'rate increase' in context with the entire provision, we determine that the terms do not apply to the 1993 Glenside Public Library District building and maintenance rate. When read in context, the terms are clear and unambiguous. The terms 'new rate' and 'rate increase' are followed by the phrase 'authorized by statute.' Thus, section 18-190(a) of the Tax Cap Act applies only to rates that have been newly authorized by statute or rate limits that have been increased by statute. Since 1978 public library districts have been authorized to levy a building and maintenance tax at a rate of 0.02%. Pub. Act. 80-1152, eff. July 1, 1978. Because the tax was authorized before 1993, the 1993 Glenside Public Library District building and maintenance tax is not a 'new rate.' Further, because the tax rate limit of 0.02% has not been increased, the 1993 Glenside Library District building and maintenance tax is not a 'rate increase.' Thus, section 18-190(a) does not apply and a direct referendum was not required. Accordingly, the trial court erroneously granted the Objectors' motion for judgment on the pleadings." 1212 Associates, 288 Ill.App.3d at 483, 681 N.E.2d at 137-38.

5

1212 Associates, however, was later called into question by a subsequent decision from the Second District also written by Justice McLaren, Allegis Realty Investors v. Novak, 356 Ill.App.3d 887, 827 N.E.2d 485 (2005). In Allegis Realty, property taxpayers filed objections to a tax imposed by the Naperville Township Road District, alleging:

> "[T]he county clerk extended a hard-road tax levy of $248,000 for 1997, at a rate of $0.0127 per $100 of assessed valuation, by including that amount in an annual certificate of levy. The purported authority for the extension was a referendum held at the annual township meeting in 1979. That referendum authorized a 'special tax rate of $0.167 on the [sic] $100 of assessed valuation.' However, the 1979 referendum was void because notice was not provided as specified in section 6-601 of the Illinois Highway Code (Ill.Rev.Stat.1977, ch. 121, par. 6-601)." Allegis Realty, 356 Ill.App.3d at 888, 827 N.E.2d at 486-87.

In Allegis Realty, the relevant section under the Township Code (hereinafter Code) required that before establishing or increasing any township tax rate that may be established or increased by the electors at the annual township meeting, the township clerk must be presented with a petition authorizing that action signed by not less than 10% of the township's registered voters. 60 ILCS 1/30-20(b) (West 1996). The objectors contended that section 30-20(b) applied, and since the petitions presented at the 1997 meeting contained only 50 signatures, far less than the 10% of registered voters required, the referendum violated the Code. In reply, the

6

township road district contended that section 30-20(b) did not apply, asserting that section 30-20(b) was limited to establishing or increasing a tax rate but that the district's hard-road fund tax levy had been authorized and extended for many years before 1997 and thus the tax was not established or increased for 1997. Allegis Realty, 356 Ill.App.3d at 889, 827 N.E.2d at 487-88. The trial court granted the district's motion for summary judgment.

In reversing the trial court, the appellate court found that section 30-20(b) did apply. The district, on appeal, tried to use the decision in 1212 Associates to argue that the 1997 referendum did not establish or increase a township tax rate because, regardless of the district's prior actions, the General Assembly had long before authorized the tax rate, and the referendum was based on this long-standing grant of legislative authority. Allegis Realty, 356 Ill.App.3d at 891, 827 N.E.2d at 489. The appellate court disagreed, and distinguished 1212 Associates, stating:

> "[T]he statutes are distinguishable. In 1212 Associates, we held that, in section 18-190(a), the phrase 'authorized by statute' directly modified 'new rate or rate increase.' Thus, a 'new rate or rate increase' meant a rate or increase brought about by the General Assembly, not by the local taxing body. However, section 30-20(b) contains no such limitation." Allegis Realty, 356 Ill.App.3d at 891-92, 827 N.E.2d at 489.

The court reasoned that 30-20(b) applied whenever the electors at an annual township meeting vote on whether to establish or increase township taxes, as the body doing the increasing or establishing, based on the statutory language, is the township, not the General Assembly.

7

Allegis Realty, 356 Ill.App.3d at 892, 827 N.E.2d at 489. Thus, 1212 Associates was distinguishable based on the applicable statutes. However, the court went on to cast doubt on the continued validity of its ruling in 1212 Associates. The court stated:

"We also agree with plaintiffs that the legislative history of section 18-190(a) casts great doubt on the precedential value of 1212 Associates. Before we issued our opinion there, the legislature amended the statute to specify that '[r]ates required to extend taxes on levies subject to a backdoor referendum in each year there is a levy are not new rates or rate increases under this Section if a levy has been made for the fund in one or more preceding 3 levy years. ***[These changes] are declarative of existing law and not a new enactment.' Pub. Act 89-718, § 5, eff. March 7, 1997. Therefore, the legislature intended that there could be a 'new rate or rate increase' even *without* action by the legislature, *e.g.*, when the local taxing district enacts a levy after having made no levy in the preceding three years. As a result, even could we analogize section 30-20(b) of the Township Code to section 18-190(a) of the tax cap act, we doubt whether that would help the District here, as the latter might apply even if the legislature has not acted recently." (Emphasis in original.) Allegis Realty, 356 Ill.App.3d at 892, 827 N.E.2d at 490.

Allegis Realty was eventually taken up and reversed by our supreme court, albeit on grounds different from those presented in the instant case. See Allegis Realty Investors v. Novak, 223 Ill.2d 318, 860 N.E.2d 246 (2006). The supreme court never passed judgment on the dicta

8

contained at the end of Allegis Realty where Justice McLaren questioned the validity of his earlier opinion in 1212 Associates regarding whether "new rate" meant only new taxes authorized by the General Assembly, as opposed to existing statutorily authorized taxes imposed for the first time by a local taxing body.

The regulations of the Department of Revenue construe "new rate" or "new tax" as meaning a tax imposed for the first time by the taxing body, not just the General Assembly, which supports plaintiff's position. In the technical manual "Property Tax Extension Limitation Law" published by the Department of Revenue, the Department defines a "new rate" as one not previously levied, as opposed to one newly authorized by the legislature after PTELL became effective. However, the regulations of the Department of Revenue in the Administrative Code or its manuals are not binding on this court if they conflict with the governing statute. See United Technical Corp. v. Department of Revenue, 107 Ill.App.3d 1062, 1067, 438 N.E.2d 535, 539 (1982).

In the instant case, the question of whether or not the levy is void is dependent on whether the tax was considered "new" under section 18-190. This court must determine whether the interpretation in 1212 Associates was correct or if as the dicta in Allegis Realty suggests, 1212 Associates was wrongly decided.

What section 18-190 defines "new rate" to be is a matter of statutory interpretation. When presented with an issue of statutory construction, the role of the court is to ascertain and give effect to the intent of the legislature. General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill.2d 1, 13, 862 N.E.2d 209, 219 (2007). Legislative intent can be determined from the language of the statute, which, if unambiguous, should be enforced as

9

written.  General Motors Corp., 224 Ill.2d at 13, 862 N.E.2d at 219.  When considering the intent behind the statute, the court should look to the reason for the law, the problems the law remedies, and the objects and purposes sought, not just the statutory language.  General Motors Corp., 224 Ill.2d at 13, 862 N.E.2d at 219.

In examining the construction of section 18-190, we find that it meant to subject only taxes newly authorized by statute to the popular referendum requirement.  We concur with the analysis conducted by the court in 1212 Associates.  The terms are clear and unambiguous.  "New rate" and "rate increase" are followed by the phrase "authorized by statute."  The phrase "authorized by statute" modifies the "new rate" and "rate increase" phrases.  1212 Associates, 288 Ill.App.3d at 483, 681 N.E.2d at 137-38.

As to the criticism of 1212 Associates in Allegis Realty, it should be remembered that the court in Allegis Realty did not specifically overrule its earlier decision in 1212 Associates, but rather chose instead to distinguish the two statutory sections at issue and only criticized 1212 Associates in dicta.  Further, that criticism related mostly to subsequent amendments dealing with "backdoor referendums."  The levy at issue in the present case does not have a backdoor referendum and thus does not fall under that portion of the statute.  Since the "Detention Home-Operations" levy is not subject to a backdoor referendum, whether it is a new rate is still determined by whether its statutory authorization, not use, predates the effective date of section 18-190.  Regarding the Department of Revenue regulations, those regulations are persuasive but not binding and this court does not have to follow those regulations if it finds them in conflict with the plain meaning of the statute, as those rules can neither limit nor extend the scope of the statute. See United Technical Corp., 107 Ill.App.3d at 1067, 438 N.E.2d at 539; Accord Du-

10

<u>Mont Ventilating Co. v. Department of Revenue</u>, 73 Ill.2d 243, 247, 383 N.E.2d 197, 200 (1978).

Based on the above, we find that "new rate" under the statute means only those new taxes newly authorized by statutes enacted after the effective date of section 18-190, which was January 1, 1994 (Pub. Act 88-455 (1993)). Therefore, as the "Detention Home-Operations" levy was authorized by statute as far back as 1907 and updated as recently as 1967, no referendum was required before it could be imposed. 55 ILCS Ann. 75/5, Historical & Statutory Notes (West 2004). Since we have found that the levy was not a "new rate," the county was not required to hold referendums on the tax imposition. The decision of the trial court is affirmed.

Affirmed.

JUSTICE SCHMIDT, specially concurring:

I agree with the dissent, that a "new rate" is a tax that has not previously been assessed in a particular jurisdiction. I disagree with the Second District's interpretation of section 190 pronounced in *In re Application of the Du Page County Collector for the Year 1993*, 288 Ill. App. 3d 480 (1997). The definition created by the Second District is at odds with the plain and ordinary meaning of "new rate" and seems stretched to accommodate the tax challenged in that case. Department of Revenue publication PTAX 1800 is not binding law, but it is ample evidence that the ordinary meaning of "new rate" is "any rate for a fund for which the district has never levied in the past." Department of Revenue, Property Tax Extension Limitation Law Technical Manual, 8 (2001).

11

Unlike Justice Carter, I believe a referendum was clearly necessary to impose this tax in 1997. It was "new" then.

Paying a tax one year does not, in and of itself, foreclose contesting its validity later. *People ex rel. v. Tarman v. Cincinnati, Indianapolis & Western R.R. Co.*, 261 Ill. 582, 104 N.E. 252 (1914). But each year's tax bill represents a different cause of action with its own liabilities and defenses. *People ex rel. Lloyd v. University of Illinois*, 357 Ill. 369, 192 N.E. 243 (1936). Consequently, an objection that was relevant in 1997 *and only in 1997* cannot be made in 2001. Plaintiffs do not allege a "rate increase" since 1997.

Plaintiffs' arguments that they are acting as private attorneys general to save the citizens of Will County from an improper tax is disingenuous and belied by the record. The record shows that plaintiffs contested this tax when it was new. Instead of seeing their protest through to a court judgment for the common good, they eked out a settlement in their own self-interest. They did the same thing in following years. Now the tax is no longer a new rate and plaintiffs have lost their basis for objection.

The tax was new in 1997, it was not new in 2001. Therefore, I concur with the judgment above.

PRESIDING JUSTICE McDADE, dissenting:

The majority affirms the decision of the Will County Circuit Court denying plaintiff Acme Markets, Inc. Relief on its tax objection. For the reasons that follow, I respectfully dissent.

12

I would tend to agree with the majority and with the second district in *In re Application of the Du Page County Collector for the Year 1993,* 288 Ill. App. 3d 480, 681 N.E.2d 135 (1997) (hereinafter *1212 Associates*), that the language of section 18-190 of the Property Tax Extension Limitation Law (PTELL) (35 ILCS 2000/18-190 (West 2006)) is plain and unambiguous. However, I think we would all be wrong in reaching that conclusion because I believe plaintiff is correct that it, in fact, has a completely different meaning than that advanced by the majority. That different reading is, in my opinion, at least equally reasonable, thus rendering the language ambiguous..

The majority finds, as did the court in *1212 Associates*, that "authorized by statute" refers to and somehow serves to define "new rate or a rate increase." I think plaintiffs are correct and that it refers to the language that follows it, so that it reads "authorized by statute to be imposed without referendum..."rather than "[i]f a new rate is authorized by statute...".

I believe that what the statute says and means is: if a taxing body wants to levy a "new rate" after January 1, 1994, pursuant to a statute that had authorized levying such a tax without referendum or had made it subject to a backdoor referendum, it must now submit the proposed new rate to direct referendum.

First, such an interpretation makes perfect syntactical sense. Section 18-190 does not refer to a "new tax," but rather a "new rate." The applicable section of the County Shelter Care and Detention Home Act (55 ILCS 75/5 (West 2006)) originally authorized the annual levy and collection of "a tax not exceeding .015% or the rate limit in effect on July 1, 1967, whichever is greater...for the purpose of...providing, establishing, supporting and maintaining such a shelter care or detention home." Counties with more than 300,000 but less than 1,000,000 inhabitants

13

were authorized to levy and collect a larger tax (.04% for construction and .02% for operation) "without adoption of this Act by the legal voters of the counties and without a referendum." The statute then authorizes increases to "a *rate* not exceeding .10%." The interpretation developed by *1212 Associates* and adopted by the majority in this case appears to require a new taxing statute for section 18-190 to apply, and I do not believe that. that is what the legislature either said or intended.

Second, the purpose of the PTELL is to provide greater citizen control over the levy of the taxes they are required to pay. It would be contrary to that purpose (or would at least not be fully consistent with it) to exclude from its protection any new increases under previously-authorized taxing statutes that allow their imposition without referendum.

Third – and this is a logical extension of the second – section 18-190 would be unnecessary if it does not apply to legislation pre-dating its enactment. The legislature could simply make all new taxing statutes subject to referendum; there would be no need for a remedial provision such as PTELL.

Fourth, submitting as I do that the statute must be ambiguous because reasonable minds differ on what it actually says, I would find that the Illinois Department of Revenue's definition of a "new rate" is fully consistent with the reading of the plaintiffs (and mine) and should be dispositive of the question before us. The department's definition states:

> "4. When a levy for a specific fund is made for the first time, this is a new rate under Section 18-190 *without regard to whether it is a new statutory authorization."* (Emphasis added.) Technical Manual, Illinois Department of Revenue, 86 Ill. Adm. Code

14

110.190

The majority acknowledges that the regulations of the Department of Revenue construing "new rate" or "new tax" as well as the section just cited from the manual support the statutory construction advanced by plaintiff in this action and which I am advocating by way of this dissent. The majority discounts these regulations and directions, however, saying: "the regulations of the Department of Revenue in the Administrative Code or its manual are not binding on this court if they conflict with the governing statute. See *United Technical Corp. V. Department of Revenue,* 107 Ill. App. 3d 1062, 1067, 438 N.E.2d 535, 539 (1982)." Slip op. at 9. It appears, however, that Justice McLaren's uncertainty about the continued validity of *1212 Associates* is similarly based.

The regulatory/statutory conflict on which the majority relies is only with what I believe to be a flawed construction of the statute, not the statute itself. In the face of what seems to be a clear ambiguity, we should be able to utilize those regulations to inform our decision on how the language of the statute is properly construed to effect the legislative intent.

In summary, I believe that: the statutory language is ambiguous, the construction of that language in *1212 Associates* is flawed, the interpretation of the department charged with the implementation of the statute is available to us for consideration, and that interpretation is quite persuasive and should be followed by this court. Because this analysis differs from that of the majority, I dissent.