FIFTH DIVISION  

                                         March 31, 1999    

  

                
 

                

No. 1-98-2456 

NORTH SHORE COMMUNITY BANK     )  Appeal from the  

AND TRUST COMPANY,             )  Circuit Court of 

                               )  Cook County. 

Plaintiff-Appellant       )

     and Cross-Appellee,       )

                               )

v.                        )

                               )

MARY ANN KOLLAR,               )

                               )  Honorable  

Defendant-Appellee        )  David G. Lichtenstein, 

and Cross-Appellant.      )  Judge Presiding. 

JUSTICE GREIMAN delivered the opinion of the court: 

Plaintiff 
North Shore Community Bank and Trust Company (Bank) appeals the dismissal of its one-count complaint, alleging a cause of action pursuant to section 15(a)(1) of the Illinois Rights of Married Persons Act (commonly referred to as the Family Expense Act) (Act) (750 ILCS 65/15(a)(1) (West 1996)) against defendant Mary Ann Kollar for an unpaid promissory note executed by her husband only.  

Although the Act was passed in 1874, this appeal raises an issue of first impression as to whether a promissory note falls within the term "family expense" under the Act.  We find that borrowed money obtained from a bank and secured by a promissory note does not constitute a family expense and, therefore, one spouse cannot be held responsible for the default of the payment of the note executed by the other spouse under the Act.  Thus, we affirm the dismissal of the complaint. 

On cross-appeal, defendant asserts that the trial court erred in denying her request for an award of costs, expenses and attorney fees under section 15(a)(3) of the Act (750 ILCS 65/15(a)(3) (West 1996)).  We find that the language of section 15(a)(3) is mandatory, not discretionary.  Accordingly, we reverse the trial court's order denying such award and remand the matter for a determination of an appropriate amount.  

In its one-count complaint, the Bank alleged that defendant was the wife of Robert Jeffs Kollar (Robert), who died on April 19, 1997.  Prior to his death, Robert had executed a promissory note in the amount of $150,000 with the Bank in December 1995, due in 90 days.  The note, which was attached to the complaint, revealed that it and its three subsequent renewals were signed only by Robert and the collateral for the note was 152,500 shares of stock in BioSolutions, Inc.  In 1996, the Bank renewed the note on three consecutive occasions, 
i.e.
, March 18, September 18, and December 18.  The last renewal was due on April 18, 1997.  On April 19, 1997, Robert died, leaving a balance due of $148,777.19.  

The Bank alleged that in December 1995, Robert "represented and warranted to" the Bank that the money was "to be used for payment of family tax obligations" and the Bank's purpose "in making the loan to Robert was to facilitate his payment of family tax obligations."  The Bank further alleged that Robert had deposited the money into his personal checking account and, with defendant, disbursed the entire sum of the loan.  In paragraph 16 the Bank specifically alleged that the proceeds from the Bank's loan "to Robert were, upon information and belief, drawn against and disbursed upon the written directions of Robert and Mary Ann, and were used for family expenses."  The Bank listed family expenses as including "payment of taxes, acquisition and maintenance of shelter, home improvement, transportation, medical insurance, food and beverages, travel, legal fees, residential utilities, personal financial services, security services, magazine subscriptions, club expenses, safe deposit box rental, interest and principal payments on personal loans, clothing, support and education of themselves and their [three minor] children."  Based on these allegations, the Bank claimed that it was a creditor entitled to recovery of the sums due it from defendant under section 15(a)(1) of the Act.  

In response, defendant filed a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 1996)), alleging that the complaint was substantially insufficient at law.  Defendant contended that the Bank, as a mere lender of money, is not entitled to pursue a cause of action under the Act because the Bank merely seeks repayment of a loan, not payment for goods and articles provided to the family.  Defendant further stated that the loan was provided by a promissory note executed by Robert only and the Bank's right of recovery for the debt owed by him rests against Robert's estate, not defendant individually.

Following a hearing on June 19, 1998, the trial court granted defendant's motion to dismiss with prejudice.  In addition, the order denied "defendant's oral motion for the recovery of costs, expenses and attorney's fees incurred in defending the action, brought in accordance with 750 ILCS 65/15(a)(3)."   

Thereafter, the Bank filed a notice of appeal, seeking reversal of the dismissal of its complaint and a finding that it has stated a good cause of action under section 15(a)(1) of the Act.  In addition, defendant filed a notice of cross-appeal, seeking a reversal of the denial of costs, expenses and attorney fees and remandment to the trial court for a determination of the amount of costs, expenses and attorney fees to be awarded defendant.  

We review 
de novo 
the dismissal of a complaint under section 2-615
.  Vernon v. Schuster, 
179 Ill. 2d 338, 344 (1997).  We must take as true all well-pled allegations of fact contained in the complaint and construe all reasonable inferences therefrom in favor of the plaintiff.  
Vernon, 
179 Ill. 2d at 341.  A section 2-615 motion attacks the legal sufficiency of a complaint, and our inquiry under these circumstances is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Vernon, 
179 Ill. 2d at 344.  

As a threshold matter, we reject defendant's contention that the complaint is deficient on its face, arguing that it contains allegations unsupported by any facts.  From our review of the complaint, we find that the allegations are adequately pled for the purpose of a section 2-615 motion.  Proof of the factual allegations would be a matter for discovery.       

On the direct appeal, the Bank asserts that section 15(a)(1) of the Act entitles a bank to recover from one spouse money borrowed by the other spouse where the money was alleged to have been used for family expenditures.  The Bank argues for such result based on the history, text and purpose of the statute.  The Bank further maintains that current society, as distinguished from the world of 100 years ago, requires a more expansive interpretation of the Act.      

Defendant contends that the Act does not allow a bank to recover on a failed loan from the spouse of the borrower where the spouse was not a party to the loan.  Defendant argues that (1) the Act does not apply to the Bank's loan agreement with Robert; (2) borrowed money is not an item for which recovery is contemplated by the Act; and (3) the Bank's sole remedy exists under the terms of the promissory note.  

Section 15(a)(1) of the Act provides that "[t]he expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly and separately."  750 ILCS 65/15(a)(1) (West 1996).  The 
identical
 language now codified at section 15(a)(1) has existed since the Act was enacted in 1874. 

The purpose of the Act is to protect creditors.  
Proctor Hospital v. Taylor, 
279 Ill. App. 3d 624, 627 (1996).  The court in 
Proctor Hospital 
reasoned that "by making the husband and wife jointly liable for all family expenses, regardless of which spouse incurs the expense, the Expense Statute expanded the remedies available to creditors.  [Citation.]  Thus, we must assume that the purpose of this statute is to protect creditors."  
Proctor Hospital, 
279 Ill. App. 3d at 627 (a creditor could impose liability against noncustodial parents for expenses incurred on behalf of their children)
.  

The Illinois Supreme Court has defined family expenses as "expenses for articles which conduce in a substantial manner to the welfare of the family generally and tend to maintain its integrity."  
Carson Pirie Scott & Co. v. Hyde, 
39 Ill. 2d 433, 436 (1968) (upheld the constitutionality of the Act).  All necessaries are included as family expenses "even though used exclusively by individual members of the family."  
Purity Baking Co. v. Industrial Comm'n, 
334 Ill. 586, 588 (1929) (the child of a deceased mother who died in a work-related accident was entitled to workmen's compensation benefits).  In contrast, a family expense "does not include business expenses, which are incurred merely to secure the means to maintain the family, nor private or individual expenses, which do not affect the collective body of persons under one head constituting a household or family."  
Hyman v. Harding, 
162 Ill. 357, 360 (1896).  More recently, this court, relying on the supreme court opinion in 
Hyde, 
defined a family expense "as one which contributes to the welfare of the family and benefits or maintains its integrity."  
Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n, 
222 Ill. App. 3d 738, 741 (1991). 

Courts have also recognized that the term "family expense" has not been, and perhaps cannot be, clearly defined.  
White v. Neeland, 
114 Ill. App. 3d 174, 175 (1983) ("[w]hat constitutes a 'family expense,' however, escapes precise definition"); 
Louis Berman & Co. v. Dahlberg, 
336 Ill. App. 233, 236 (1948) ("the term 'family expense' has not been clearly defined and *** perhaps a definition should not be attempted").  Notwithstanding the absence of a precise definition for the term "family expense," the nature and character of expenses that have been judicially considered to constitute a family expense for purposes of the Act are instructive.  

For purposes of the Act, expenses for the following goods and services have been found to be family expenses: (1) hospital, medical and funeral expenses of a spouse or child (
Graul v. Adrian, 
32 Ill. 2d 345, 347 (1965) (parents are liable for the medical and funeral expenses of their minor children); 
Saunders v. Schultz, 
20 Ill. 2d 301, 310 (1960) (the surviving spouse is personally liable for the medical and burial expenses incurred on behalf of a husband or wife)); (2) utility bills (
Peoples Gas Light & Coke Co., 
222 Ill. App. 3d at 741 (the gas company could look to the spouse of the customer of record for payment of gas service); 
cf. Central Illinois Light Co. v. Illinois Commerce Comm'n, 
204 Ill. App. 3d 1 (1990) (utility bills incurred by former and estranged husbands who had separated from their wives were solely liable for the expenditures because the husbands alone benefited from them)); (3) clothing and wearing apparel expenses (
Pope v. Kaleta, 
90 Ill. App. 2d 61 (1967) (a wife was held liable for wearing apparel purchased by her deceased husband, where the clothing was bought for their own use and their two children); 
Louis Berman, 
336 Ill. App. at 236 (a fur coat for the wife constituted a family expense to hold the husband liable); 
Whitney, Inc. v. Mandel, 
218 Ill. App. 316 (1920) (a dress for the wife)); (4) some jewelry (
White, 
114 Ill. App. 3d at 176 ("articles of jewelry or similar items of luxury" could possibly be considered a family expense); 
cf. Hyman, 
162 Ill. at 360 (a ring purchased by the wife was not a family expense but, rather, "must be treated as any other ring, for mere personal gratification and adornment")); (5) carpeting for the house (
Lyman v. Harbaugh, 
117 Ill. App. 3d 732 (1983)); (6) rent of family apartment (
Weinstein v. Morris, 
281 Ill. App. 12 (1935)); and (7) wages of a domestic servant (
Campbell v. Heuer, 
139 Ill. App. 631 (1908)).    

In contrast, borrowed money has never been held to constitute a family expense and, in fact, three cases, albeit dated, have held to the contrary.  
Laughlin v. Dalton, 
200 Ill. App. 342 (1916); 
Davis v. Ritchey, 
55 Iowa 719, 8 N.W. 669 (1881); 
Sherman v. King, 
51 Iowa 182, 1 N.W. 441 (1879).  Even though appellate court decisions issued before 1935 have no binding authority (
Bryson v. News America Publications, Inc., 
174 Ill. 2d 77, 95 (1996)), we view these decisions as persuasive.  Moreover, Iowa decisions have long been considered by Illinois courts for the purpose of the Act because the Illinois Act was taken from the Iowa statute.  
Carson Pirie Scott, 
39 Ill. 2d 433 (relied on Iowa case law); 
Hyman, 
162 Ill. at 360 (the Illinois family expense law was taken from a statute in Iowa); 
Louis Berman, 
336 Ill. App. at 236 (noted that the Illinois Act was copied from the Iowa statute and relied on Iowa case law). 

In 
Laughlin, 
the plaintiff had loaned $100 to her sister, the wife of the defendant.  After the death of her sister and the defendant's failure to repay the loan, plaintiff sued the defendant to recover the debt.  At trial the evidence showed that the money was used to pay a butcher's bill.  In response to plaintiff's argument that the Act applied to make the defendant liable on the loan, the court found the loan "still remains the debt of the party borrowing the money [the sister] and not of the party whose debt was paid [the defendant].  And whatever the law may be as to the liability of a husband for money loaned his wife to purchase necessaries or to purchase articles for family use, we see no right of recovery here."  
Laughlin, 
200 Ill. App. at 346. 

In 
Davis, 
the Iowa Supreme Court specifically held that borrowed money does not constitute a family expense.  
Davis, 
55 Iowa at 721, 8 N.W. at 670.  In 
Davis, 
the defendant's deceased husband borrowed money from the plaintiff and executed a note for the loan.  After defendant's husband died, the plaintiff sued defendant to recover on the note.  After conceding that the money borrowed by the defendant's deceased husband was used for family expenses, the Iowa Supreme Court still rejected the plaintiff's cause of action and held that "[t]he question, then, is whether borrowed money can be regarded as a family expense, if borrowed for and used in obtaining things which, if obtained on credit, would be an expenditure for the family.  We think not."  
Davis, 
55 Iowa at 721, 8 N.W. at 670.  The Bank in the present case acknowledged that the 
Davis 
case is virtually indistinguishable but argues that it was wrongly decided.  

In 
Sherman, 
defendants W.W. King and Julia King were husband and wife.  W.W. King executed a promissory note to the plaintiff for money paid by plaintiff at W.W. King's orders for "certain indebtedness which had been incurred for the defendant's family expenses."  
Sherman, 
51 Iowa at 183, 1 N.W. at 442.  In his cause of action, the plaintiff relied on the statute that makes family expenses chargeable upon the property of both the wife and husband.  The Iowa court held that the plaintiff had no right of action against the wife, Julia King.  
Sherman, 
51 Iowa at 183, 1 N.W. at 442. 

These three cases (
Laughlin, Davis 
and 
Sherman) 
recognize that cash is fungible, in contrast to specific goods, articles and services.  We find these three opinions persuasive and hold that the Bank in the present case cannot seek recovery from defendant on a failed promissory note that was executed by her husband alone and was secured by shares of stock.  To hold otherwise would open up every loan to minute dissection, tracing every dollar to its ultimate use.  Such dissective analysis of a promissory note for cash only does not accord with the prior use or intention of the Act.             

Credit card expenditures would seem to present a closer case based on the more immediate nexus between the item purchased and the debt incurred.  More than a century ago, in 1879, the 
Davis 
court acknowledged that obtaining items considered family expenses on credit would be an expenditure for the family and, thus, fall within the family expense statute.  
Davis, 
55 Iowa at 721, 8 N.W. at 670.  In 1999, although in a case not involving the Act, this court recently recognized that credit card debt may be a family expense for purposes of the Act, depending on the nature of those debts.  
Doe v. TCF Bank Illinois, FSB, 
No. 1-97-

3832 (January 4, 1999) (in a case involving a husband's complaint for invasion of privacy, the court observed that "plaintiff's spouse has a 'natural and proper interest' in knowing about plaintiff's credit card debt because, depending on the nature of those debts, she is potentially liable therefor," citing the Act).  

The case before us today, however, involves a promissory note and matters concerning credit card debt must be left for another day.  While the Bank ably observes the changes over the course of 125 years in the way people transact purchases and payments, whether it be the 1880s, the current century, or the new millennium, there is nothing new about the debt incurred by a person who executes a promissory note with a bank.  

On cross-appeal, defendant asserts that the trial court erred in denying her attorney fees pursuant to section 15(a)(3) of the Act:  

"Any creditor who maintains an action in violation of 

this subsection (a) for an expense other than a family 

expense against a spouse or former spouse other than the 

spouse or former spouse who incurred the expense, 
shall be 

liable
 to the other spouse or former spouse for his or her 

costs, expenses and attorney's fees incurred in defending 

the action."  (Emphasis added.)  750 ILCS 65/15(a)(3) (West 1996).    

As an initial matter in the cross-appeal, the Bank asserts that this court should not consider defendant's cross-appeal, arguing that defendant failed to preserve a record sufficient to permit appellate review.  The Bank complains that defendant failed to provide a petition or motion for fees, a hearing transcript or any substituted report of proceedings.  The Bank argues that "[i]n the absence of a record, there is no legal reason for this court to consider [defendant's] issue at all." 

The "legal reason" to consider defendant's cross-appeal is, quite simply, the express language of the order on appeal:  "Defendant's oral motion for recovery of costs, expenses and attorney's fees incurred in defending the action, brought in accordance with 750 ILCS 65/15(a)(3), is denied."  The Bank offers no authority for denying review of a trial court order based on the absence of a hearing transcript, which is not a particularly unusual situation in the appellate court, or based on the premise that the order derived from an oral, not written, motion.  We find the Bank's contention to be without merit. 

Regarding the substance of the cross-appeal, the Bank contends that the fee-shifting provision in the Act is directory, not mandatory, and, thus, the trial court could exercise its discretion on whether to invoke the provision.  We disagree. 

"Whether a statutory provision is mandatory or merely directory depends upon the intent of its drafters.  *** Legislative use of the word 'may' is generally regarded as indicating a permissive or directory reading, whereas use of the word 'shall' is generally considered to express a mandatory reading."  
People v. Reed, 
177 Ill. 2d 389, 393 (1997) (the word "shall" in the subject statute was held to be mandatory).  Although the Bank provides a litany of cases that fall within the exception to the general rule announced in 
Reed, 
none of the cases addressed whether an attorney fees provision could be discretionary even though it contained the word "shall."  

The only case that mentions the attorney fees provision in the Act viewed the award of fees as mandatory.  
Proctor Hospital, 
279 Ill. App. 3d at 629.  In 
Proctor Hospital, 
the plaintiff hospital rendered medical services to the defendant's daughter and then sued the defendant, based on the Act, to recover its medical costs.  The court in 
Proctor Hospital 
held that the medical expenses of a 
minor
 child, but not an 
emancipated
 child, are family expenses under the Act.  The court remanded the case for the trial court to decide whether the child was a minor or emancipated at the time she received the services from the plaintiff hospital.  The court expressly held, however, that if the child was found to have been emancipated at the time the medical services were provided, then the plaintiff hospital would be liable for the defendant's attorney fees.  
Proctor Hospital, 
279 Ill. App. 3d at 629.  

We find that the attorney fees provision in section 15(a)(3) is mandatory based on the language in the Act and the finding in 
Proctor Hospital.  
Accordingly, we reverse the denial of fees for defendant and remand for a determination of the proper amount.  

Affirmed in part and reversed in part; cause remanded. 

HOURIHANE, P.J., and THEIS, J., concur.