No. 3–08–0114

Filed January 15, 2010 (corrected title 2-9-10)
IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| LASALLE BANK NATIONAL ASSOCIATION, | ) | Appeal from the Circuit Court |
| | ) | for the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| CYPRESS CREEK 1, LP, an Illinois limited | ) | |
| partnership; CRYSTAL LIFESTYLES, INC., an | ) | |
| Illinois corporation; DENNIS EGIDI; DRE, INC. | ) | |
| NATIONAL CITY COMMUNITY | ) | |
| DEVELOPMENT CORPORATION d/b/a | ) | |
| National City Community Development | ) | |
| Association-Illinois; FIFTH THIRD | ) | |
| COMMUNITY DEVELOPMENT | ) | |
| CORPORATION; ANTHONY F. STARCEVIC; | ) | |
| DONNA STARCEVIC; ILLINOIS HOUSING | ) | |
| DEVELOPMENT AUTHORITY; CL | ) | |
| MANAGEMENT, INC.; WEGNER SEWER AND | ) | |
| WATER, INC.; HILL CONCRETE PRODUCTS; | ) | |
| NEE-CORP; UNDERGROUND PIPE & VALVE | ) | |
| CO.; BASIC DEVELOPMENT GROUP; and | ) | |
| "UNKNOWN OWNERS" and "NON-RECORD | ) | |
| CLAIMANTS," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| EDON CONSTRUCTION COMPANY., INC., | ) | Nos.   05–CH–1281 |
| an Illinois corporation and EAGLE CONCRETE, | ) |        06-CH-2054 |
| | ) | |
| Plaintiffs-Appellants | ) | |
| Cross-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CYPRESS CREEK 1, LP, an Illinois limited | ) | |

partnership; CRYSTAL LIFESTYLES, INC., an )
Illinois corporation; DENNIS EGIDI; DRE, INC.; )
NATIONAL CITY COMMUNITY )
DEVELOPMENT CORPORATION, d/b/a )
National City Community Development )
Association-Illinois; LASALLE NATIONAL )
BANK ASSOCIATION, a national banking )
association; FIFTH THIRD COMMUNITY )
DEVELOPMENT CORPORATION; ANTHONY )
F. STARCEVIC; DONNA STARCEVIC; )
ILLINOIS HOUSING DEVELOPMENT )
AUTHORITY; CL MANAGEMENT, INC.; )
WEGNER SEWER AND WATER, INC.; HILL )
CONCRETE PRODUCTS; NEE-CORP.; )
UNDERGROUND PIPE & VALVE CO.; BASIC )
DEVELOPMENT GROUP; and "UNKNOWN )
OWNERS" and "NON-RECORD CLAIMANTS," )
)
    Defendants. )
)
    and )
)
LASALLE BANK NATIONAL ASSOCIATION, )
a national banking association, )
)    Honorable
    Defendant-Appellee )    Bobbi N. Petrungaro
    Cross-Appellant. )    Judge, Presiding

_____

JUSTICE O'BRIEN delivered the opinion of the court:

_____

Plaintiff-appellee-cross-appellant LaSalle Bank National Association filed this action to

foreclose a mortgage it held on a parcel of real estate that was being developed for senior apartments.

Defendants-appellants-cross-appellees Edon Construction Co. and Eagle Concrete filed mechanic's

liens for work they had done on the apartment buildings. The property was sold pursuant to a

sheriff's sale, and in allocating the sale proceeds, the trial court apportioned the funds between

LaSalle as mortgagee and Edon and Eagle as mechanic's lien claimants, and subrogated LaSalle to

2

the position of mechanic's lien claimant for various costs it funded during construction. On appeal, Edon and Eagle challenge the allocation and LaSalle cross-appeals the trial court's denial of its request for attorney fees. We affirm in part, reverse in part, and remand.

FACTS

LaSalle Bank made a loan to Cypress Creek, LLP, which sought to develop a 13.79- acre parcel of land into senior apartments. The loan, in the amount of $8,018,151, was secured by a mortgage and security agreement. Section 4.3 of the mortgage provided, in pertinent part:

> "In any suit to foreclose the lien hereof * * *, there shall be allowed and included as additional indebtedness in the decree for sale or other judgment or decree, all expenditures and expenses which may be paid or incurred by or on behalf of the Mortgagee for attorneys' fees * * * as the Mortgagee may deem reasonably necessary * * * to prosecute such suit."

The mortgage was recorded on June 13, 2003.

In December 2004, Eagle Concrete contracted with Cypress Creek to perform concrete work for the project for $632,000. In January 2005, Edon entered into a written contract with Cypress Creek to provide rough carpentry for the project. Cypress Creek defaulted on the mortgage in June 2005. In July 2005, LaSalle filed the instant complaint to foreclose the mortgage. Eagle recorded a $63,478 mechanic's lien on November 4, 2005. Edon recorded a mechanic's lien in the amount of $285,826.80, on November 21, 2005. Eagle filed its complaint for foreclosure of its mechanic's lien on March 30, 2006. A judgment of foreclosure and sale was entered against Cypress Creek in April 2006, finding that the balance due on the mortgage was $8,621,110, and reserving a

3

determination as to priorities between LaSalle as the mortgagee and the various mechanic's lien claimants, including Edon and Eagle. Thereafter, the order of judgment was amended to reflect payment on the judgment of $5,577,540, with an amount due of $3,043,570. The property was sold at a sheriff's sale in May 2006 to LaSalle for $1,300,000. In August 2006, Edon filed a complaint to foreclose its mechanic's lien, which was consolidated with the mortgage foreclosure proceeding.

A trial ensued in September 2007. Edon, Eagle, and three other mechanic's lien claimants not parties to this appeal challenged confirmation of the sale and argued for priority of their liens over the mortgage. Various experts testified as to the value of the real estate and the improvements. Other testimony included that of John Marynell, a senior vice president at LaSalle, who testified that LaSalle had funded the construction draws while the work was progressing, including $1,446,266 in construction costs, $99,917 in engineering costs, $2,842 for environmental reports, and $8,538 for utilities. Marynell also testified that LaSalle paid the perfected mechanic's lien for $30,202 of Basic Development, a defendant not involved in this appeal. In total, LaSalle paid $1,587,765 in construction and development costs.

The trial court confirmed the sale and entered an order allocating the sale proceeds as follows:

| | |
|---|---|
| Expense of sale | $ 1, 542.00 |
| Receiver's fees and expenses | 746,243.94 |
| | |
| Remaining proceeds: | |
| LaSalle Bank | $ 471,614.06 |
| Edon Construction | 50,000.00 |
| Eagle Concrete | 10,000.00 |
| Gallagher Construction | 7,300.00 |
| All American Roofing | 7,300.00 |
| Another Plumbing | 6,000.00 |
| | $ 1,300,000.00 |

The court's apportionment was based on the following:

Value of land before improvements: $1,360,000.00

| Value of enhancements: | | Lien claimants | $ 480,934 |
|---|---|---|---|
| | + | bank subrogation | 1,587,765 |
| | | | $ 2,068,699 |
| | + | land value | 1,360,000 |
| | = | total value | $ 3,428,699 |

LaSalle was subrogated as to the following amounts for a total of $1,587,765:

| construction costs | $1,446,266 |
|---|---|
| engineering costs | 99,917 |
| environmental reports | 2,842 |
| utilities | 8,538 |
| Basic Development's lien | 30,202 |

$2,068,699/$3,428,699 = 60% to enhancers of property (lien claimants)
$1,300,000/$3,428,699 = 40% to mortgagee

Value of improvements: $522,214* x 60% = $331,328.40
    Eagle: $ 63,478**/$2,068,699 = 3% = approximately $10,000
    Edon: $285,827**/$2,068,699 = 15% = approximately $50,000
    LaSalle subrogation: $1,587,765/$2,068,699 = 76% = $256,514

Value of land: $522,214 x 40% = $215,100 to LaSalle

*remaining $ from sale proceeds
** contract price

Edon and Eagle filed motions for modification of the judgment, challenging the trial court's priority determinations. The trial court denied the motions in January 2008. Thereafter, Edon appealed the trial court's allocation of the sale proceeds, and Eagle joined Edon in its appeal. LaSalle cross-appealed the trial court's denial of its request for attorney fees.

ANALYSIS

The first issue for our consideration is whether the trial court erred in apportioning the sheriff's sale proceeds. Edon and Eagle present two arguments that the apportionment was in error. First, they argue that as mechanic's lien claimants, they have full priority over a mortgagee and that

5

the trial court should have satisfied their liens in total before disbursing any funds to LaSalle as mortgagee. Second, Edon and Eagle argue that LaSalle was not entitled to be subrogated to the status of a mechanic's lien claimant for monies it paid in construction and development costs through funding draws from the trust. They submit that the trial court improperly elevated mortgagee LaSalle to the status of a mechanic's lien claimant in that there was no evidence that the amounts paid by LaSalle were lienable costs or that any mechanic's liens were perfected to which LaSalle could be subrogated.

Proceeds from a real estate sale pursuant to judicial foreclosure should be applied, *inter alia*, to satisfaction of claims in the order of priority adjudicated in the judgment of foreclosure or order confirming the sale. 735 ILCS 5/15-1512 (West 2006). Section 16 of the Illinois Mechanics' Lien Act (Act) sets forth the priority of liens and provides:

> "No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises, and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest."

6

770 ILCS 60/16 (West 2006).

A lienable improvement includes furnishing labor or services in improving land or a structure on the land, and performing any services or incurring any expense as an architect, structural engineer, or professional engineer. 770 ILCS 60/1 (West 2004).

As part of its priority analysis, a court considers that the priority of claims between a mortgagee and a mechanic's lien claimant depends on the date the mortgage was recorded and the date the underlying construction contract was executed. *State Bank of Lake Zurich v. Winnetka Bank*, 245 Ill. App. 3d 984, 993, 614 N.E.2d 862, 869 (1993). When a lien claimant's contract predates the recording of the mortgage, the lien has priority over the mortgage. *State Bank*, 245 Ill. App. 3d at 989, 614 N.E.2d at 869. When the recording of the mortgage occurs before the construction contracts are executed, the mechanic's lien is preferred only in proportion to the value of the improvements forming the basis for the lien. *Commercial Mortgage & Finance Co. v. Woodcock Construction Co.*, 51 Ill. App. 2d 61, 64-65, 200 N.E.2d 923, 925 (1964). When sale proceeds are substituted for the land and building, the mortgagee and lien claimants are entitled to the same proportionate interest in the sale proceeds that they had in the property prior to its sale. *Moulding-Brownell Corp. v. E.C. Delfosse Construction Co.*, 304 Ill. App. 491, 498, 26 N.E.2d 709, 712 (1940). When the sale proceeds are insufficient to satisfy the mortgage and the mechanic's liens, the court employs the proportionality analysis set forth in section 16 of the Act to allocate the sale proceeds. 770 ILCS 60/16 (West 2006); *Petroline Co. v. Advanced Environmental Contractors, Inc.*, 305 Ill. App. 3d 234, 237-38, 711 N.E.2d 1146, 1148-49 (1999). Apportionment of sheriff's sale proceeds and statutory interpretation are questions of law that this court reviews *de novo*. *Acme Markets, Inc. v. Callanan*, 378 Ill. App. 3d 676, 677-78, 882 N.E.2d 181, 182 (2008).

7

In claiming that their liens have priority over LaSalle's mortgage, Edon and Eagle misread the requirements set forth in section 16 of the Act. It does not provide that mechanic's lien claimants in their position are entitled to full satisfaction of their liens before the mortgagee's claim is considered. Rather, priority is determined by first looking at whether the lien claimants' underlying contracts were executed before or after the mortgage was recorded. In this case, both Edon and Eagle entered into contracts with Cypress Creek, the owner and developer, after LaSalle had recorded its mortgage on June 13, 2003. Eagle's contract with Cypress was dated December 7, 2004, and Edon contracted with Cypress on January 18, 2005. Because the mortgage predated the underlying contracts, the liens are preferred to the extent of the value of the improvements and the mortgage as to the value of the land. As the sale proceeds were insufficient to satisfy the liens and the mortgage in full, the trial court employed the proportionality analysis, crediting Edon and Eagle with their share of the value of the improvements and crediting LaSalle its proportional share of the value of the land. We find that the trial court correctly allocated the sheriff sale proceeds pursuant to section 16 of the Act.

We now consider whether the trial court was correct in subrogating LaSalle to the position of mechanic's lien claimant when it determined the parties' proportional shares. Edon and Eagle assert that LaSalle is not entitled to be subrogated as a lien claimant, arguing that LaSalle is not a lien creditor and that the amounts it disbursed were secured by the mortgage.

The purpose of the Mechanics' Lien Act is to protect those who, in good faith, furnish material or labor for construction of buildings. *Lawn Manor Savings & Loan Ass'n v. Hukvari*, 78 Ill. App. 3d 531, 532, 397 N.E.2d 247, 248 (1979). Any enhanced value produced by payments by the owner while the work was progressing should be applied to the satisfaction of the mortgage.

*Clark v. Moore*, 64 Ill. 273, 283 (1872); *Moulding-Brownell*, 304 Ill. App. at 499, 26 N.E.2d at 713.

Improvements placed by the mortgagor on the premises are embraced in and subject to the mortgage. *Clark*, 64 Ill. at 283; *Moulding-Brownell*, 304 Ill. App. at 499, 26 N.E.2d at 713. However, when a bank as mortgagee pays contractors or materialmen with loan proceeds, the bank becomes subrogated, as any remaining lien claimants would be required to share the sale proceeds with the materialmen as lien claimants had the bank not paid those claims. *Detroit Steel Products Co. v. Hudes*, 17 Ill. App. 2d 514, 521, 151 N.E.2d 136, 139 (1958).

The trial court found that LaSalle was subrogated for the construction and development costs it funded through the construction draws in the amount of $1,587,765, including $1,446,266 for construction costs, $99,917 for engineering costs, $2,842 for environmental reports, $8,538 for utilities, and $30,202 to pay the perfected mechanic's lien of Basic Development. While, as LaSalle contends, these may be lienable costs, the trial court, in subrogating LaSalle as to those costs, failed to differentiate between perfected and unperfected mechanic's liens, apparently regarding the construction costs funded by LaSalle to be the equivalent of the perfected mechanic's liens brought by Edon and Eagle. The record establishes that the evidence regarding these construction costs consisted of the trial testimony of Marynell that LaSalle paid the costs, Marynell's affidavit attesting to the same, and the documents supporting the draws and evidencing that the costs were paid. There was no evidence that any of the claims for payment for which LaSalle was subrogated were the subject of mechanic's liens except for the Basic Development lien, which LaSalle paid in full because Basic Development's contract with Cypress predated LaSalle's mortgage.

The fact that as the construction lender LaSalle supplied the funds from which the contractors were paid does not place LaSalle in the position of an owner or mortgagor whose payments to

9

contractors enhanced the value of the property. In *Clark*, the court considered how the "enhanced value of the property produced by the owner paying for labor and material" should be appropriated. *Clark*, 64 Ill. at 282-83. The court concluded the "true rule [is] to hold all improvements placed by the mortgagor on the premises as being embraced in and subject to the mortgage." *Clark*, 64 Ill. at 283. Under the circumstances at bar, LaSalle was neither the owner nor the mortgagor of the subject property at the time the payments for labor and material were made. LaSalle cannot step into the shoes of the owner in order to fall under the dictates of *Clark* and be subrogated to the contractors paid by the owner.

We acknowledge that *Detroit Steel* instructs that the payment of claims by the owner or mortgagee with which the lien claimants would be required to share the sale proceeds entitles the mortgagee to subrogate the rights of the paid claimants to the extent that they would have received the loan proceeds. In *Detroit Steel*, the mortgagee was subrogated to the extent of the payment from its loan proceeds as to two lien claimants. *Detroit Steel*, 17 Ill. App. 2d at 521, 151 N.E.2d at 139. In making its determination, the reviewing court noted that the bank failed to require the statutory "sworn statement of lien claimants." *Detroit Steel*, 17 Ill. App. 2d at 520, 151 N.E.2d at 139. We interpret the court's statement as support for our conclusion that in order to be subrogated to other lien claimants, the liens must be perfected liens. Our conclusion is furthered by the facts of the case which indicate that the two claimants had unpaid liens at the time the mortgagee required they be paid from the loan proceeds and by the court's description of "known mechanics lien claimants." *Detroit Steel*, 17 Ill. App. 2d at 516, 520, 151 N.E.2d at 137, 139. In the instant case, LaSalle is attempting to be subrogated for "materialmen" who have been paid as the work progressed and do not have perfected liens. *Detroit Steel* does not mandate that result.

Under the instant circumstances, the record is devoid of any proof that Edon and Eagle, as claimants with perfected liens, would be required to share the sale proceeds with anyone except the other claimants with perfected liens. LaSalle obtains the benefit of the improvements it financed, as the enhanced value is encompassed by the mortgage, for which it received a judgment in its favor against Cypress Creek. We thus determine that LaSalle may only be subrogated in the amount of $30,202 for Basic Development's perfected lien. On remand, the remaining $1,557,563 in construction and development costs for which the trial court subrogated LaSalle should be allocated proportionally between Edon and Eagle as the claimants with perfected mechanic's liens. *Dixmoor Golf Club, Inc. v. Evans*, 252 Ill. App. 468, 470-71 (1929) (only parties who joined appeal are entitled to remedy; nonappealing parties remain bound by original order).

The next issue is whether the trial court erred when it denied LaSalle's request for attorney fees. LaSalle complains that it was entitled to the payment of its fees pursuant to section 15-1512 of the Code of Civil Procedure (the Code) and that the trial court improperly denied its request for attorney fees. 735 ILCS 5/15-1512 (West 2006). According to LaSalle, because its mortgage provided for an award of fees, the trial court was required to grant its request.

The mortgage at issue states:

> "In any suit to foreclose the lien hereof * * *, there shall be allowed and included as additional indebtedness in the decree for sale or other judgment or decree, all expenditures and expenses which may be paid or incurred by or on behalf of the Mortgagee for attorneys' fees * * * as the Mortgagee may deem reasonably necessary * * * to prosecute such suit."

11

Section 15-1512(b) of the Code provides that the proceeds from the sale of real estate "shall be applied in the following order: *** (b) *** to the extent provided for in the mortgage *** reasonable attorneys' fees *** and other legal expenses incurred by the mortgagee." 735 ILCS 5/15-1512(b) (West 2006). A party may not be awarded attorney fees unless they are authorized by statute or provided for in a contract. *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231, 867 N.E.2d 577, 579 (2007). Whether the provision in a statute is mandatory or directory depends on its language with the use of 'shall' generally indicating a mandatory intent. *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d 838, 846-47, 710 N.E.2d 106, 111-12 (1999), quoting *People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997). Questions of statutory interpretation, such as whether a court is authorized to grant attorney fees, is a question of law this court reviews *de novo*. *Acme Markets*, 378 Ill. App. 3d at 677-78, 882 N.E.2d at 182.

Section 15-1512(b) authorizes the payment of attorney fees as provided for in the mortgage. Section 4.3 of the mortgage in the case at bar allows attorney fees incurred by LaSalle as mortgagee to be included as "additional indebtedness in the decree for [judicial] sale." Section 15-1512(b) gives priority to the payment of attorney fees as provided for in the mortgage over payment of mechanic's liens. The attorney fees incurred by LaSalle in bringing its foreclosure action should have been prioritized above the mechanic's liens. We find that the award of attorney fees is mandatory under the statute and therefore we hold that the trial court erred in denying LaSalle's request for payment of its attorney fees. On remand, the trial court should determine LaSalle's attorney fees and any amount found reasonable should be subtracted from the sale proceeds pursuant to section 15-1512(b) and the remaining proceeds reallocated proportionally consistent with this opinion between Edon and Eagle.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part and reversed in part. Cause remanded.

CARTER, J., concurs in part and dissents in part.

SCHMIDT, J., specially concurs.